**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Geordie Sanborn, Cheryl Lovell, and William McKusick, | No. 17-cv-12125-NMG No. 17-cv-12543-NMG |
| *Plaintiffs*, | |
| v. | |
| ATHENAHEALTH, INC., | |
| *Defendant*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY PLAINTIFFS-RELATORS CHERYL LOVELL AND WILLIAM MCKUSICK FOR AWARD OF REASONABLE EXPENSES, ATTORNEYS' FEES, AND COSTS UNDER THE FALSE CLAIMS ACT, 31 U.S.C. § 3730(d)(1)**

## <u>INTRODUCTION</u>

These Consolidated Cases involve two False Claims Act *qui tam* actions filed two months apart in October and December 2017 against Defendant Athenahealth, Inc. ("Athena"), an electronic health records ("EHR") provider. The action brought by Plaintiff-Relator Geordie Sanborn ("Sanborn") (Case No. 17-cv-12125-NMG) and the action brought by Plaintiffs-Relators Cheryl Lovell and William McKusick ("Lovell and McKusick") (Case No. 17-cv-12543-NMG), each alleged that Athena engaged in various conduct that violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). In addition, Relator Sanborn alleged misconduct in Athena's meaningful use payments for EHR ("meaningful use claim"), and Relators Lovell and McKusick alleged that Athena caused health care providers to falsely bill Medicare for services ("billing claim").

The United States investigated the two *qui tam* actions for over two years. After months of negotiation, the United States, Athena, and the Relators reached an agreement in principle to resolve all *qui tam* claims in the two actions. In January 2021, the United States elected to intervene in part in the *qui tam* actions and filed a Complaint in Intervention against Athena. The United States alleged that certain conduct by Athena violated the Anti-Kickback Statute and rendered it liable to the United States under the False Claims Act; this included conduct alleged by Relators Lovell and McKusick. The United States did not intervene in Relator Sanborn's meaningful use claim or in Relators Lovell and McKusick's billing claim.

The United States, Athena, and the Relators entered into a Settlement Agreement dated January 27, 2021 (copy attached as **Exhibit A**) in which all *qui tam* claims (those on which the United States intervened and those on which it did not intervene) were resolved. Under that Agreement, Athena agreed to pay the United States $18.25 million plus interest and the Relators agreed to release and dismiss all of their claims, including Relator Sanborn's meaningful use

claim and Relators Lovell and McKusick's billing claim. The United States announced the settlement on January 28, 2021. https://www.justice.gov/opa/pr/electronic-health-records-technology-vendor-pay-1825-million-resolve-kickback-allegations

As noted in paragraph 5 of the Settlement Agreement, the Relators in the two actions claimed entitlement to their respective shares of the government recovery, but because the Relators and the United States had not agreed on the amount of the share(s) by the time of the Settlement Agreement, that issue was reserved. *See also* Settlement Agreement at paragraph 13. But, the Relators had reached agreement on how to allocate any relator share payment to be made by the United States.  In turn, in the Settlement Agreement, all parties acknowledged that the Relators had reached agreement on how to allocate any relator share payment to be made by the United States.

The United States and the Relators negotiated and agreed upon the amount of the relator share award to be paid by the United States to resolve the Relators' respective claims. After Athena paid the United States as required by the Settlement Agreement, the United States paid the relator share it had agreed upon to Relator Sanborn who as agreed sent a portion of that share to Relators Lovell and McKusick.

Athena has not agreed to pay Relators' respective claims to recover their reasonable attorneys' fees, costs, and expenses under the mandatory fee shifting provision of the False Claims Act, 31 U.S.C. § 3730(d)(1).

Now before the court are the Relators' respective motions for an award of their reasonable attorneys' fees, expenses, and costs under 31 U.S.C. § 3730(d)(1).  Relators Lovell and McKusick are entitled to such an award because they are "persons" who brought an "action"

under 31 U.S.C. § 3730(b), and the government "proceed[ed]" with their action within the meaning of 31 U.S.C. § 3730 by intervening in (and settling) the action.

As discussed in more detail below, Relators are entitled to an award against Athena for all reasonable expenses, attorneys' fees, and costs, and this Court should use black letter law in determining the amount of that award.

## THE FALSE CLAIMS ACT

The False Claims Act ("FCA") is the government's primary anti-fraud weapon; it prohibits, *inter alia*, submitting or causing the submission of a false or fraudulent claim for payment and the making or causing to be made of any false or fraudulent statement material to a claim. 31 U.S.C. §§ 3729, *et seq*.

Under the False Claims Act, the Attorney General of the United States may bring a "civil action" against a person found to have violated or be violating the FCA.  31 U.S.C. § 3730(a). In addition, "A [private] person may bring a civil action for a violation [of the FCA] for the person and for the United States Government. The action shall be brought in the name of the Government… ." 31 U.S.C. § 3730(b)(1). Actions brought on behalf of the United States by private litigants are known as *qui tam* actions, and the persons bringing them are known as "relators." The "person" must serve a copy of the complaint and "written disclosure of substantially all material evidence and information the person possesses" on the Government. The complaint must be filed "in camera and remain under seal for at least 60 days" and "for good cause shown" by the Government, the seal may be extended by the court. 31 U.S.C. § 3730(b)(2)-(3). Before the end of any seal extension period, the Government shall "proceed with the action, in which case the action shall be conducted by the Government," 31 U.S.C.

4

§ 3730(b)(4)(A), or "notify the court that it declines to take over the action in which case the person bringing the action shall have the right to conduct the action," 31 U.S.C. § 3730(b)(4)(B).

If the Government "proceeds with the action," it has "the primary responsibility for prosecuting the action," but the person bringing the action has the right to continue as a party to the action subject to certain limitations. 31 U.S.C. § 3730(c)(1)-(2). If the Government "elects to intervene and proceed with an action brought under 3730(b), the Government may file its own complaint or amend the complaint of the person" who has brought an action under section 3730(b) …." 31 U.S.C. § 3731(c).

Where the Government "proceeds with an action brought by a person under subsection (b)" the FCA provides that "such person" shall receive …at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim …"   31 U.S.C. § 3730(d)(1).

The statute provides that any such award shall come from the proceeds received by the government from the defendant, *i.e*, it is not a separate obligation the defendant owes to the "person" in addition to what the defendant pays the government. The section then goes on to create an obligation that the defendant owes directly to the "person" in addition to the amount it pays the government. That obligation is to pay the person's reasonable expenses, attorneys' fees, and costs. *Id.*

As discussed, here the United States did "proceed" with Relator Lovell and McKusick's *qui tam* action as well as Relator Sanborn's consolidated *qui tam* action. It did so by electing to intervene and filing a Complaint in Intervention. The United States, Athena, and all of the Relators then entered into a settlement of the actions, pursuant to which Athena paid the United States $18,250,000.

Under these circumstances, the text of and the policy behind the fee-shifting provision added to the FCA in 1986 mandates an award of reasonable fees and costs to Relators. *See generally Brief of Amicus Curiae Taxpayers Against Fraud Education Fund in United States ex rel. Cook-Reska v. Community Health Systems, Inc*., United States Court of Appeals for the Sixth Circuit No. 20-5637, Doc. 26 at pp. 12-27[1] attached hereto as **Exhibit B** ("TAFEF Amicus Brief") (explaining textual and policy reasons for mandatory fee shifting when government intervenes in and settles multiple *qui tam* cases against a defendant).[2]

## ARGUMENT

**I.   The Government Proceeded with the Relators' *Qui Tam* Action, and They are Entitled to an Award of Reasonable Expenses, Attorney's Fees, and Costs Under 31 U.S.C. § 3730(d)(1)**

The mandatory fee shifting provision of the FCA at issue in this case is an integral part of the amendments to the FCA Congress adopted in 1986. Those amendments enhanced the government's ability to recover for fraud committed against it by incentivizing private persons to report fraud and by encouraging private attorneys to invest time and resources to augment the government's limited resources to pursue such cases. *See* **Exhibit B** (TAFEF *Amicus Brief*) at pp. 9-16. Congress did so by amending the FCA to (1) increase the potential reward for whistleblowers and (2) require that the defendant pay reasonable fees and costs to their counsel. *Id.* The 1986 Senate Report recognized that there was no specific authorization for attorneys' fees in the FCA, and emphasized the importance of adding a mandatory fee shifting provision

---

[1] Page references for this brief are to page numbers as they appear in the PACER version.

[2] As explained in that Brief (at p.8), Taxpayers Against Fraud Education Fund ("TAFEF") is a nonprofit, public interest organization dedicated to combating fraud against the Government and protecting public resources through public-private partnerships made possible by the False Claims Act ("FCA") and other federal and state statutes. It is committed to the development and preservation of effective anti-fraud legislation and has a strong interest in ensuring proper interpretation and application of the FCA.

and *that it be the defendant, and not the Government, who would be liable for payment of fees*

*"in addition to the forfeiture and damages amount." Id.* at pp. 14-15, *quoting* S. REP. NO. 99-

345, at 5294 (1986) (emphasis added).

Since the 1986 FCA *qui tam* amendments, recoveries to the government have soared,

with more than $64 billion restored to the U.S. Treasury. *See* U.S. Dep't of Just., *Justice*

*Department Recovers Over $2.2 Billion from False Claims Act Cases in Fiscal Year 2020*

(Jan. 14, 2021), https://www.justice.gov/opa/pr/justice-department-recovers-over-22-billion-

falseclaims-act-cases-fiscal-year-2020. The vast majority of those recoveries is attributable to *qui*

*tam* actions brought by whistleblowers.

The mandatory fee shifting provision at issue here provides in relevant part:

> *If the Government proceeds with an action brought by a person* under *subsection (b),*
> *such person shall,* subject to the second sentence of this paragraph, receive at least 15
> percent but not more than 25 percent of the *proceeds of the action or settlement of the*
> *claim*, depending upon the extent to which the person substantially contributed to the
> prosecution of the action ... *Any payment* to a person under the first or second sentence of
> this paragraph shall be made from the proceeds. *Any such person shall also receive* an
> amount for reasonable expenses which the court finds to have been necessarily incurred,
> plus reasonable attorneys' fees and costs. *All such expenses, fees, and costs shall be*
> *awarded against the defendant*.

31 U.S.C. § 3130(d)(1) (emphasis added).

Here, as discussed above, there is no doubt that the Government *proceeded* with the

Relators' *qui tam* action brought under subsection (b) by electing to intervene in the action, filing

a complaint in intervention, and settling the consolidated cases. There is also no doubt that the

Relators received a portion of the proceeds ("relator share") the Government paid through an

agreement Relators had reached in order to resolve any potential first to file disputes under 31

U.S.C. § 3730(b)(5) and that all parties (including the United States and Athena) acknowledged

this relator sharing agreement in the Settlement Agreement. Consequently, Relators satisfy 31

U.S.C. § 3730(d)(1) and are entitled to an award of reasonable expenses, fees, and costs against Athena.

However, we are informed that Athena is nevertheless challenging Relators' entitlement to attorneys' fees and costs on the grounds that they did not receive their portion of the relator share payment directly from the United States, but rather indirectly.  Such an argument was convincingly and rightly rejected in *United States ex rel. Doghramji v. Community Health Systems*, *Inc.*, Case 3:14-cv-02160, Document 202 (M.D. Tenn. April 1, 2020), *appeal pending*, United States Court of Appeals for the Sixth Circuit, Case: 20-5637:

> The Government intervened in and settled all four of the consolidated cases. Thus, the Government "proceeded with" each case consolidated before us…

> Section 3730(d) contains two "shall" statements that form the backbone of the parties' dispute: (1) "If the Government proceeds with an action brought by a person under subsection (b), such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement . . . "; (2) "Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). Defendants argue the phrase "any such person" could refer to either (sic) "a person under subsection b," meaning it could also incorporate the requirement that a *qui tam* plaintiff receive the relator's statutory share of any recovery in order for its fees to be assessed against the defendant.

> Several statutory clues indicate that there is no requirement that a relator receive the statutory share in order to receive her attorney's fees. First, the phrase "such person" appears in both designations of eligibility for the relator's share and attorney's fees. *See U.S. ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1045 (6th Cir. 1994). In the relator's share phrase, "such person" is modified by a reference to § 3730(b), "[a]ctions by private persons." 31 U.S.C. § 3730(b). Thus, the repetition of "such person" conveys the same requirement for attorney's fees as for the relator's share: the requesting party must qualify as a private person who can bring a *qui tam* claim under § 3730(b). *See Taxpayers Against Fraud*, 41 F.3d at 1045 (describing the parallel structure of the two sections). Second, there is a single enumerated condition that spells out the requirements for relator's recovery of both her share and her fees: "If the Government proceeds with an action. . . ." No other conditional phrasing appears in this section. In other words, when Congress wanted to create a condition, it knew how to do it. There is no reason to believe Congress implicitly required receipt of the relator's share in order to receive a recovery for attorney's fees. Finally, the fact that relators contracted to reduce their share of the recovery below the statutory threshold to encourage

> settlement does not vitiate their interest in recovering their costs. *See Taxpayers Against*
> *Fraud*, 41 F.3d at 1047. Holding otherwise would discourage settlement and frustrate the
> goal of reducing protracted litigation implicit in the assignment of attorney's fees and
> costs to FCA defendants.

*Id*. at 3-5.  *See also United States ex rel. Rafter H Construction, LLC v. Big-D Construction*

*Corp*, 350 F. Supp.3d 938, 940-41 (D. Idaho 2018), on reconsideration, 2019 WL 286717 (D.

Idaho 2019) (where government elected to intervene and subsequently settled both *qui tam*

actions, the FCA "mandates that Plaintiffs receive a share of the proceeds as well as their

reasonable costs and attorney fees.").  *See generally* TAFEF Brief at pp. 9-16, 25-26 attached

hereto as **Exhibit B** (explaining textual and policy reasons for mandatory fee shifting when

government intervenes in one or multiple *qui tam* actions and the government is successful

through settlement or judgment).

 Nevertheless, some district courts have reached a different conclusion, holding that a

relator who recovered a share indirectly from the government was barred from recovering

attorneys' fees and costs. *See United States ex rel. McNeil v. Jolly*, 451 F. Supp.3d 657 (E.D.

Louisiana 2020); *United States ex rel. Greenwald v. Kool Smiles Dentistry, PC*, 2018 WL

4356744, at *3 (D. Conn. Sept. 12, 2018); *United States v. NextCare, Inc.*, 2013 WL 431828, at

*2 (W.D.N.C. Feb. 4, 2013). We expect Athena to rely on these cases, but these cases are not

binding on this Court and are, we believe, at odds with the text and purpose of the FCA fee

shifting provision.[3]  The better analysis we believe is that of the district court in *Doghramji* cited

above.

---

[3] Moreover, in none of those cases did the settlement agreement the defendant signed acknowledge, as it does here,
that "It is understood by all parties that Relators have reached their own agreement regarding respective shares of
any funds paid by the United States … ." *See* **Exhibit A** (Settlement Agreement) at ¶ 5.

We acknowledge this Court considered the FCA's fee shifting provision in *United States ex rel. Allstate Insurance Company et al. v. Millennium Laboratories, Inc.,* 464 F. Supp.3d 449, 453- 454 (D. Mass. 2020), and held under the facts of that case that the relator was not entitled to fees and costs. However, there are fundamentally important distinctions between that case and the present case. Most importantly, in *Allstate*, where the relators were sixth to file, the government intervened in three actions filed *before* Allstate's action, *but did not* intervene in Allstate's action. Accordingly, this Court correctly framed the issue as: "Whether the Allstate Relators are entitled to recover attorneys' fees is, therefore, dependent upon whether they brought an action pursuant to § 3730(b) *in which the government successfully intervened* and thereby meet the criteria set forth in the first sentence of § 3730(d)(1)." *Id.* at 453 (emphasis added).  On the specific facts of that case, the Court concluded that the Allstate Relators did not satisfy the criteria for an award under § 3730(d)(1).

This Court found against the Allstate Relators on two grounds: (1) that after years of litigation among the three relators in whose cases the government *had intervened*, the First Circuit had adjudicated first-to-file on a claim-by-claim basis and held that a single relator was first to file on *all* the claims the government had settled with Millennium, and thus entitled to a relator share;[4] and (2) "for the additional reason that the government declined to proceed with [Allstate's] complaint.....it is undisputed that although the government intervened on behalf of several relators in this action, it did not pursue the complaint of the Allstate Relators". *Id.* at 453-54.

---

[4] The so-called" first to file" provision of the FCA, 31 U.S.C. § 3730(b)(5),  provides: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."

In light of these facts, this Court found unavailing Allstate's argument that its claimed "private sharing agreement" with the adjudicated first to file relator somehow entitled it to fees. *See* 464 F. Supp.3d at 454 (citing *NextCare, Inc., supra)*.  As in *NextCare*, the Allstate relators' private agreement was not referenced in the government's settlement agreement with the defendant. *See* 464 F. Supp.3d at 454 and fn.3, *supra*. Indeed, as this Court noted: "Unlike typical FCA settlements, the Settlement Agreement does not address the question of how the relator's share should be apportioned among the several relators." *Id.* at 452. Moreover, the share question had been litigated for several years and only one relator was determined to be entitled to a share. *Id*. at 453-454 ("There can be only one first filer and the First Circuit has definitely determined it is McGuire in this case … the [Allstate Relators] private agreement with McGuire does not render them 'first filers' or otherwise impact the First Circuit's decision"). As such, this Court reasoned that the Allstate Relators "cannot demonstrate entitlement to recovery of the relator's share or, by extension, attorneys' fees." *Id*. at 454.

In reaching its conclusion, that the sixth filing Allstate Relators in whose case the government did not intervene and whom the court had adjudicated was not first to file, this Court found that: "To hold otherwise would be inconsistent with the clear congressional intent in crafting limiting provisions in §3730 designed to encourage lawsuits brought by insiders intending to expose fraud and discourage lawsuits brought by opportunistic plaintiffs in search of a payday."  *Id*. at 454, citing *NextCare, supra*. "Congress could not have intended for a plaintiff, who is not the first filer and, therefore, not entitled to the relator's share, to be guaranteed recovery of attorneys' fees. Interpreting § 3730(d)(1) in such a manner would incentivize tag-along suits brought by relators seeking a large recovery with minimal risk of incurring substantial attorneys' fees and costs."

In the course of its decision, this Court did interpret the FCA's fee shifting provision to require that a relator receive a share pursuant to the first sentence of that provision in order to be entitled to fees under the fourth sentence of that provision. *Id*. at 453 ("That phrase necessarily refers to the immediately preceding sentence which, in turn, describes the person who received payment "under the first or second sentence" of § 3730(d)(1)). While we think this interpretation is at odds with the text and purpose of the provision for the reasons discussed above, *see, e.g., Doghramji, supra*, and **Exhibit B**, we also believe it should not be dispositive in this case given key differences between the Allstate Relators and the present Relators.  Indeed, the broad application of that interpretation to all multi-relator cases would have the perverse and unintended effect of discouraging the very persons and attorneys that Congress wanted to incentivize to report and pursue *qui tam* cases under the FCA. Consider these differences between Allstate and the current case:

(1) Allstate filed its *qui tam* action almost five years after the chronologically first filer (Cunningham), more than two years after the relator the First Circuit ultimately determined was the "first to file relator" (McGuire), and almost two years after the news media began reporting on the government investigation of Millennium. In addition, the government did not intervene in Allstate's action. Under these circumstances, this Court was rightfully concerned about awarding fees for a "tagalong" matter. In contrast, here, the Relators filed their action less than two months after the Relator Sanborn, with no knowledge of Sanborn's action or any investigation, after having contacted the government pre-filing, and the government investigated the actions together including by interviewing Relators and issuing its first demand for discovery (an FCA Civil Investigative Demand) some 7-8 months after the cases were filed. *See generally* Declarations of Durrell and Schlicter.

(2) In Allstate, the Relator was a party to the settlement agreement (along with all the other relators), but there was no reference in the agreement to a sharing agreement among Relators or how the relator's share should be apportioned among the several relators. *See also* fn. 3, *supra*. Indeed, it was anticipated that which relator was entitled to a share might have to be determined by a court—and indeed it was.   In contrast, here, not only were Relators all parties to the settlement agreement with the United States and Athena and Relator Sanborn, but that agreement made clear that while Relators were reserving their rights on share as to the United States, it was "Understood by all parties that Relators have reached their own agreement regarding

their respective shares of any funds paid by the United States to Relator Sanborn." *See* **Exhibit A** (Settlement Agreement) at ¶ 5. Relators negotiated share together with DOJ. *See also* ¶ 13 referring to *Relators'* claims for a share of the proceeds of this Agreement under (d)(1). All Relators did receive a portion of the share paid by the government. *See generally* Declarations of Durrell and Schlicter.

(3)  In Allstate, the First Circuit ultimately determined which Relator was the first to file on the claims settled by the United States and thus entitled to the share. In contrast, here, no adjudication of the issue was necessary. The Relators resolved their respective claims to share and the Settlement Agreement and all Parties acknowledged that prior to dismissal of the actions.

To hold that the present Relators, in these circumstances, are not entitled to attorney's fees and costs from Athena would take this and other courts down a dangerous path of unintended consequences. Allowing a defendant to settle intervened *qui tam* actions, obtain a release and dismissal of non-intervened claims, and then refuse to pay expenses and fees undermines the text and policy of the FCA. Such a holding would cause parties with multiple relator *qui tam* actions pending to litigate first-to file issues under 31 U.S.C. § 3730(b)(5) in the courts rather than resolving the dispute among themselves (with the United States and the defendant recognizing that resolution in return for *all* relators joining the settlement). This "circular firing squad" among relators might seem appealing to a defendant, but it would burden the courts and take government and relator resources away from investigating fraud. Having all the affected relators participate in a settlement with the defendant furthers the purposes of the FCA and the interests of the United States, the defendant (who as part of a settlement wants, as Athena did here, releases of defendant and dismissals of all claims—intervened or non-intervened), and the courts. Such litigation among relators could be pre- or post-government intervention and may need to occur while the cases are under seal. Courts would have to adjudicate which of many relators is first-to-file on the claims the United States proposes to settle before the United States could effectively settle those cases with the defendant. *See generally* Declarations of Robert Patten, Michael Behn, Royston Delaney, and Suzanne Durrell.

In short, it is one thing to deny fees and costs to a Relator such as Allstate when the court has already spent five years adjudicating relators' dispute about first to file, but it is wholly different to do so where no first to file determination was made because the parties preferred to resolve any dispute to more efficiently consummate a settlement that the United States and the defendant wanted. TAFEF Amicus Brief at 22 (Under the fee shifting provision, "Relators are 'such persons' who brought their cases under subsection (b), remained such persons as parties after intervention under (c)(1) and are entitled to recover share and fees under (d)(1). Whether Relators' cases could have been dismissed for any number of reasons in litigation including failure to state a claim, is a moot point once the Defendant decided to settle their cases"). Once a defendant settles the merits of a case, and the case is dismissed, a defendant should no longer be allowed to raise arguments about non-jurisdictional issues it might have pursued against a relator if it had not settled the case, such as first to file under 31 U.S.C. 3730(b)(5).

Unfortunately, this is a path one district court has gone down at the urging of a defendant who entered into a settlement with the government and multiple relators. *See Doghramji*, *supra*, (after concluding that the FCA fee shifting provision does not require the relator to receive a share directly from the government to be entitled to fees, the court analyzed the first-to-file and public disclosure provisions and ruled none of the relators who were party to an over $100 million settlement were entitled to fees). For the reasons cited above, and in the TAFEF Amicus Brief attached hereto as **Exhibit B**, that interpretation is fundamentally flawed. If accepted, it would upset the balance Congress so effectively struck when it amended the FCA in 1986, which has resulted in over $64 billion in recoveries since then, mostly from *qui tam*/whistleblower cases.

Accordingly, Relators Lovell and McKusick respectfully submit that in this case, on these facts, this Court should find Relators entitled to an award of reasonable attorneys' fees, expenses, and costs from Athena.

## II.    The Amount of the Award Should be Determined Using Black-Letter Law

Determination of the amount of reasonable fees to be awarded against Athena is guided by black-letter law under which the federal courts use an adjusted lodestar methodology. *See generally Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886 (1984); *García-Rubiera v. Fortuño*, 727 F.3d 102, 116 (1st Cir. 2013); *Coutin v. Young & Rubicam P.R. Inc.*, 124 F.3d 331, 337 (1st Cir. 1997); *United States ex rel. Averback v. Pastor Med. Assocs. P.C.*, 224 F. Supp. 2d 342, 350 (D. Mass. 2002).  The "lodestar" is defined as the number of hours reasonably expended multiplied by the reasonable hourly rates of the timekeepers).

The lodestar calculation is presumed to represent a "reasonable fee" although it may be adjusted under certain circumstances. This method is used to provide "an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. It "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case;" and it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-552 (2010).

To determine the appropriate hourly rates, the court "looks to 'the prevailing market rates in the relevant community." *Perdue*, 130 S. Ct. at 1672 (quoting *Blum*, 465 U.S. at 895), taking into account the fee claimants' skills, knowledge, experience and reputation forming the basis for

claimed hourly rates; and the prevailing rates in the community for similarly qualified attorneys. *Averback,* 224 F. Supp.2d at 353. *See Blum,* 465 U.S. at 895-96 n. 11; *Calhoun v. Acme Cleveland Corp*., 801 F.2d 558, 560 (1st Cir. 1986). To compensate for delay in payment, statutory attorneys' fees should be calculated using hourly rates current to the year of recovery. *Perdue*, 559 U.S. at 555; *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). Courts in the First Circuit award fees at current rates. *See*, *e.g.*, *Connolly v. Harrelson*, 33 F. Supp. 2d 92, 98 n.5 (D. Mass. 1999) ("awarding fees based upon current billing rates, as the Court does in this case, is one accepted means of compensating for a delay in payment").[5] Here evidence of the rates claimed on behalf of the firms and attorneys representing Relators Lovell and McKusick are contained in the Declarations of Jeremy Friedman and Suzanne Durrell in connections with Relator Sanborn's Motion for an Award of Attorneys' Fees and Costs and evidence of the reasonableness of those rates is contained in the Declaration of Jeremy Friedman, the Declaration of Suzanne Durrell,  and the Declaration of Andrew D. Schlicter in connection with Relator Sanborn's Motion.

As to the reasonableness of hours expended in the litigation, one  determines the number of hours actually spent and then subtracts from that figure hours which were duplicative, unproductive, ,excessive, or otherwise unnecessary." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984). Only those hours where "counsel substantially exceeded the bounds of reasonable effort" should be subtracted. *United States v. Metro Dist. Comm'n,* 847 F.2d

---

[5]*See also, e.g.*, *McMillan v. Mass. SPCA*, 1996 U.S. Dist. LEXIS 22258, at *6 (D. Mass. 1996) ("use of current, rather than historic rates, is a fair means of taking into account the inevitable delay in recouping an award of fees) (citing *Cordero v. De Jesus-Mendez*, 922 F.2d 11, 19 (1st Cir. 1990)). Counsel's rates should be adjusted upward for an award recovered after 2020. *See Amico v. New Castle Cty*., 654 F. Supp. 982, 1003-04 (D. Del. 1987) ("A multiplier of .135 will be allowed by the Court to compensate for any delay in payment").

12, 17 (1st Cir. 1988); *see Averback*, 224 F. Supp. 2d at 351. Time spent on non-intervened

claims, such as the billing claim in the McKusick and Lovell *qui tam* action and the meaningful

use claim in the Sanborn *qui tam* action, are rightfully included. *See, e.g.*, *Averback*, 224 F.

Supp. 2d at 35 n. 7 (rejecting argument that 31 U.S.C. § 3731(d)(1) fees, costs, and expenses are

unavailable for work related to released claims on which the government did not intervene). *See*

*also, e.g.*, *U.S. ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938 (7th Cir. 1996); *United States*

*ex rel. Hernandez v. Therapy Providers*, No. 06-CV-0760, 2014 WL 5282436 *4 (N.D. Ill. Oct.

14, 2014); *U.S. ex rel. Poulton v. Anesthesia Assocs. of Burlington, Inc.*, 87 F. Supp. 2d 351, 357

(D. Vt. 2000).[6]

   Ordinarily courts should defer to the fee claimant's judgment as to the reasonableness of,

and necessity for, the work. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)

("By and large, the court should defer to the winning lawyer's professional judgment as to how

much time he was required to spend on the case"); *Norman v. Hous. Auth. of Montgomery*, 836

F.2d 1292, 1306 (11th Cir. 1988) ("The measure of reasonable hours is determined by the

profession's judgment of the time that may be conscionably billed and not the least time in which

it might theoretically have been done"). As attested to in the Declaration of Suzanne Durrell,

Relators' counsel spent significant amounts of time on this case. They are prepared to present to

this Court evidence justifying and detailing the time they claim.

   Like other fee shifting statutes, the False Claims Act also entitles Relators' counsel to

fees for work establishing, and collecting, their reasonable fees. *See United States ex rel. Simring*

*v. Univ. Physician*, 2013 U.S. Dist. LEXIS 179451 *4 (D.N.J. 2013). The First Circuit has

---

[6] As the U.S. Supreme Court has held, where the words "prevailing party" are absent from a fee-shifting statute, as in 31 U.S.C. § 3731(d)(1), "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fee award." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010) (citation omitted).

recognized that: "It would be inconsistent with the purpose of [statute] to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee." *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978). *See also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981-983 (9th Cir. 2008) ("Fees on fees" must be determined by the same lodestar methodology, and downward adjustments are to be used only in "rare" cases).

Finally, under 31 U.S.C. § 3730(d)(1), Relators are entitled to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' … costs."

Relators Lovell and McKusick are prepared to submit additional evidence of their lodestar (*i.e.* number of hours reasonably expended multiplied by the reasonable hourly rates of the timekeepers) and their reasonable costs and expenses to this Court for consideration.[7]

---

[7] Because Athena has told undersigned counsel that they are challenging Relators' entitlement to any award, and because there are outstanding discovery requests to Athena, we are not submitting at this time all of our evidence relevant to the lodestar, but reserve our right to supplement this motion.

## CONCLUSION

For the reasons discussed above, Relators Lovell and McKusick respectfully submit that they are entitled to an award of reasonable attorneys' fees, costs, and expenses from Athena, with the amount to be determined by this Court.


Date: April 9, 2021                          Respectfully submitted,

                                             **RELATORS CHERYL LOVELL AND
                                             WILLIAM MCKUSICK**

                                             /s/ *Suzanne E. Durrell*
                                             Suzanne E. Durrell (BBO #139280)
                                             Email: suzanne@whistleblowerllc.com
                                             Linda C. Severin (BBO #674535)
                                             Email: linda@whistleblowerllc.com
                                             WHISTLEBLOWER LAW COLLABORATIVE LLC
                                             20 Park Plaza, Suite 438
                                             Boston, MA  02116-4334
                                             Tel: (617) 366-2800


                                             *Counsel for Relators Lovell and McKusick*