## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA *ex rel.*
Geordie Sanborn, Cheryl Lovell, and
William McKusick,

|  |  |
|---|---|
| *Plaintiffs*, | No. 17-cv-12125-NMG |
| v. | No. 17-cv-12543-NMG |
| ATHENAHEALTH, INC., | |
| *Defendant*. | |

**SUBSTITUTE MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY PLAINTIFFS-RELATORS CHERYL LOVELL AND WILLIAM MCKUSICK FOR AWARD OF REASONABLE EXPENSES, ATTORNEYS' FEES, AND COSTS UNDER THE FALSE CLAIMS ACT, 31 U.S.C. § 3730(d)**

**Table of Contents**

INTRODUCTION ........................................................................................................................... 1

THE FALSE CLAIMS ACT AND THE INSTANT *QUI TAM* ACTIONS ................................. 3

ARGUMENT .................................................................................................................................. 6

   I.    The Government Proceeded with Relators Lovell and McKusick's *Qui Tam* Action, Entitling Them to an Award of Reasonable Expenses, Attorneys' Fees, and Costs................... 6

   II.    The Amount of Relators' Fees, Costs, and Expenses is Reasonable ............................ 16

CONCLUSION ............................................................................................................................. 20

## INTRODUCTION

These Consolidated Cases involve two False Claims Act *qui tam* actions filed under seal two months apart in October and December 2017 against Defendant Athenahealth, Inc. ("Athena"), an electronic health records ("EHR") provider. As discussed below, the Relators did not learn of each others' complaints until several months later.

The action brought by Plaintiff-Relator Geordie Sanborn ("Sanborn") (Case No. 17-cv-12125-NMG) and the action brought by Plaintiffs-Relators Cheryl Lovell and William McKusick ("Lovell and McKusick") (Case No. 17-cv-12543-NMG), each alleged that Athena engaged in various different conduct that violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). In addition, Relator Sanborn alleged misconduct in Athena's meaningful use payments for EHR ("meaningful use claim"), and Relators Lovell and McKusick alleged that Athena caused health care providers to falsely bill Medicare for services ("billing claim").

The United States investigated the two *qui tam* actions for over two years. After months of negotiation, the United States, Athena, and the Relators reached an agreement in principle to resolve all *qui tam* claims in the two actions. In January 2021, the United States elected to intervene in part in the two *qui tam* actions and filed a Complaint in Intervention against Athena. The United States alleged that certain conduct by Athena violated the Anti-Kickback Statute and rendered it liable to the United States under the False Claims Act; this included conduct alleged by Relators Lovell and McKusick. The United States did not intervene in Relator Sanborn's meaningful use claim or in Relators Lovell and McKusick's billing claim.  Leaving the Relators with primary responsibility for prosecuting those actions.

The United States, Athena, and the Relators entered into a Settlement Agreement dated January 27, 2021 (copy attached as **Exhibit A**) in which all *qui tam* claims (those on which the United States intervened and those on which it did not intervene) were resolved. Under that

Agreement, Athena agreed to pay the United States $18.25 million plus interest and the Relators agreed to release and dismiss all of their claims, including Relator Sanborn's meaningful use claim and Relators Lovell and McKusick's billing claim, with prejudice. The United States announced the settlement on January 28, 2021. https://www.justice.gov/opa/pr/electronic-health-records-technology-vendor-pay-1825-million-resolve-kickback-allegations

At the government's urging the Relators had reached agreement on how to allocate any relator share payment to be made by the United States.  Moreover, there was no dispute that the Relators were entitled to 15-25% of the government's recovery under 31 U.S.C. § 3730(d). Thus, while the Relators and the United States had not agreed on the amount of the share(s) by the time of the Settlement Agreement, *all* parties (including Athena) acknowledged that the Relators had reached agreement on how to allocate any relator share payment to be made by the United States. *See* Settlement Agreement at paragraph 5*; see also* Settlement Agreement at paragraph 13.

The United States and the Relators subsequently negotiated and agreed upon the amount of the relator share award to be paid by the United States to resolve the Relators' respective claims. After Athena paid the United States as required by the Settlement Agreement, the United States paid the relator share to Relator Sanborn who as agreed sent a portion of that share to Relators Lovell and McKusick.

Nevertheless, Athena has not agreed to pay Relators' respective claims to recover their reasonable attorneys' fees, costs, and expenses under the mandatory fee shifting provision of the False Claims Act, 31 U.S.C. § 3730(d).

Now before the court are the Relators' respective motions for an award of their reasonable attorneys' fees, expenses, and costs under 31 U.S.C. § 3730(d)  Relators Lovell and

**Substitute Memorandum of Points and Authorities in Support of Substitute Motion for Award of Expenses, Attorneys' Fees and Costs - 2**

McKusick are entitled to such an award because they are "persons" who brought an "action" under 31 U.S.C. § 3730(b), and the government "proceed[ed]" with their action within the meaning of 31 U.S.C. § 3730 by intervening in (and settling) the action.

As discussed in more detail below, Relators Lovell and McKusick are entitled to an award against Athena for all reasonable expenses, attorneys' fees, and costs, and this Court should use black letter law in determining the amount of that award.

## THE FALSE CLAIMS ACT AND THE INSTANT *QUI TAM* ACTIONS

The False Claims Act ("FCA") is the government's primary anti-fraud weapon; it prohibits, *inter alia*, submitting or causing the submission of a false or fraudulent claim for payment and the making or causing to be made of any false or fraudulent statement material to a claim. 31 U.S.C. §§ 3729, *et seq*.

The Attorney General of the United States may bring a "civil action" against a person found to have violated or be violating the FCA.  31 U.S.C. § 3730(a). In addition, as here, "A [private] person may bring a civil action for a violation [of the FCA] for the person and for the United States Government. The action shall be brought in the name of the Government… ." 31 U.S.C. § 3730(b)(1). Actions brought on behalf of the United States by private litigants are known as *qui tam* actions, and the persons bringing them (such as in this case Lovell and McKusick) are known as "relators."

The *qui tam* complaint must be filed "in camera and remain under seal for at least 60 days" and the "person" must serve a copy of the complaint and "written disclosure of substantially all material evidence and information the person possesses" on the Government. 31 U.S.C. § 3730(b)(2). Relators Lovell and McKusick did so here. The seal may be extended by the court for  "for good cause shown" by the Government, 31 U.S.C. § 3730(b)(3), as happened

here for over two years while the Government investigated the two *qui tam* actions and reached a settlement with Athena.

Before the end of any seal extension period, the Government shall "proceed with the action, in which case the action shall be conducted by the Government," 31 U.S.C. § 3730(b)(4)(A), or "notify the court that it declines to take over the action in which case the person bringing the action shall have the right to conduct the action," 31 U.S.C. § 3730(b)(4)(B). Here, the United States proceeded with both *qui tam* actions by filing a notice of intervention and a Complaint in Intervention.

If the Government "proceeds with the action," as it did here, it has "the primary responsibility for prosecuting the action," but the person bringing the action has the right to continue as a party to the action subject to certain limitations. 31 U.S.C. § 3730(c)(1)-(2). If the Government "elects to intervene and proceed with an action brought under 3730(b), the Government may file its own complaint or amend the complaint of the person" who has brought an action under section 3730(b) …." 31 U.S.C. § 3731(c). Here, as noted above, the Government filed its own Complaint in Intervention. The Government may also settle the action, as it did here.

Where the Government "proceeds with an action brought by a person under subsection (b)" the FCA provides that "such person" shall receive …at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim …"   31 U.S.C. § 3730(d)(1). This is known as a "relator share" or "relator share award."

The FCA provides that any such award shall come from the proceeds received by the government from the defendant, i.e., it is not a separate obligation the defendant owes to the "person" in addition to what the defendant pays the government. 31 U.S.C. § 3730(d)(1).

**Substitute Memorandum of Points and Authorities in Support of Substitute Motion for Award of Expenses, Attorneys' Fees and Costs - 4**

However, the defendant "shall" pay directly to the "person" an additional amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." *Id.*

As discussed, here the United States did "proceed" with Relator Lovell and McKusick's *qui tam* action as well as Relator Sanborn's consolidated *qui tam* action. It did so by electing to intervene and filing a Complaint in Intervention. The United States, Athena, and all of the Relators then entered into a settlement of the actions, pursuant to which Athena paid the United States $18,250,000 plus interest, the Relators in turn agreed to release and dismiss all claims against Athena with prejudice, all parties acknowledged a relator sharing agreement, and the United States paid a relator share to Relator Sanborn that was shared with Relators Lovell and McKusick.

Under these circumstances, the text of and the policy behind the fee-shifting provision added to the FCA in 1986 mandates an award of reasonable fees and costs to Relators Lovell and McKusick. *See generally Brief of Amicus Curiae Taxpayers Against Fraud Education Fund in United States ex rel. Cook-Reska v. Community Health Systems, Inc.*, United States Court of Appeals for the Sixth Circuit No. 20-5637, Doc. 26 at pp. 12-27[1] attached hereto as **Exhibit B** ("TAFEF Amicus Brief") (explaining textual and policy reasons for mandatory fee shifting when government intervenes in and settles multiple *qui tam* cases against a defendant).[2]

---

[1] Page references for this brief are to page numbers as they appear in the PACER version.

[2] As explained in that Brief (at p.8), Taxpayers Against Fraud Education Fund ("TAFEF") is a nonprofit, public interest organization dedicated to combating fraud against the Government and protecting public resources through public-private partnerships made possible by the False Claims Act ("FCA") and other federal and state statutes. It is committed to the development and preservation of effective anti-fraud legislation and has a strong interest in ensuring proper interpretation and application of the FCA.

## ARGUMENT

**I.    The Government Proceeded with Relators Lovell and McKusick's *Qui Tam* Action, Entitling Them to an Award of Reasonable Expenses, Attorneys' Fees, and Costs**

The mandatory fee shifting provision of the FCA at issue in this case is an integral part of the amendments to the FCA Congress adopted in 1986. Those amendments enhanced the government's ability to recover for fraud committed against it by incentivizing private persons to report fraud and by encouraging private attorneys to invest time and resources to augment the government's limited resources to pursue such cases. *See* **Exhibit B** (TAFEF *Amicus Brief*) at pp. 9-16.

Congress did so by amending the FCA to: (1) increase the potential reward for whistleblowers; and (2) require that the defendant pay reasonable fees and costs to their counsel. *Id.*  The 1986 Senate Report recognized that there was no specific authorization for attorneys' fees in the FCA, and emphasized the importance of adding a mandatory fee shifting provision and *that it be the defendant, and not the Government, who would be liable for payment of fees "in addition to the forfeiture and damages amount [owed to the Government]." Id.* at pp. 14-15, *quoting* S. REP. NO. 99-345, at 5294 (1986) (emphasis added).  In short, Congress knew that the relator would need representation and could not get without a fee shifting provision.

Since the 1986 FCA *qui tam* amendments, recoveries to the government have soared, with more than $64 billion restored to the U.S. Treasury. *See* U.S. Dep't of Just., *Justice Department Recovers Over $2.2 Billion from False Claims Act Cases in Fiscal Year 2020* (Jan. 14, 2021), https://www.justice.gov/opa/pr/justice-department-recovers-over-22-billion-

falseclaims-act-cases-fiscal-year-2020. The vast majority of those recoveries is attributable to *qui tam* actions brought by whistleblowers.

The mandatory fee shifting provision at issue here provides in relevant part:

> *If the Government proceeds with an action brought by a person* under *subsection (b), such person shall,* subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the *proceeds of the action or settlement of the claim,* depending upon the extent to which the person substantially contributed to the prosecution of the action ... *Any payment* to a person under the first or second sentence of this paragraph shall be made from the proceeds. *Any such person shall also receive* an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. *All such expenses, fees, and costs shall be awarded against the defendant*.

31 U.S.C. § 3130(d)(1) (emphasis added).

There is no doubt that the Government *proceeded* with the Relators' *qui tam* action brought under subsection (b) by electing to intervene in the action, filing a complaint in intervention, and settling the consolidated cases. There is also no doubt that the Relators received a portion of the proceeds ("relator share") the Government paid through an agreement Relators had reached in order to resolve any potential first to file disputes under 31 U.S.C. § 3730(b)(5) and that all parties (including the United States and Athena) acknowledged this relator sharing agreement in the Settlement Agreement. Consequently, Relators satisfy 31 U.S.C. § 3730(d)(1) and are entitled to an award of reasonable expenses, fees, and costs against Athena.[3]

---

[3] Some courts have interpreted the phrase "the Government proceeds with an action" to mean the Government proceeds with a "claim" or "cause of action." For example, in *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101-102 (3d Cir. 2000), then-Judge Alito wrote that "[T]he qui tam statute is phrased as if every qui tam complaint contained only one claim," and concluded that "each claim in a multi-claim [FCA] complaint must be treated as if it stood alone." *Accord United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*, 769 F.3d 837, 846 (3d Cir. 2014) ("FCA's reference to 'action' may reasonably be read to mean 'claim' because the statute envisions a single-claim complaint"); *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1076 (N.D. Cal. 2020); *United States ex rel. Rauch v. Oaktree Medical Centre, P.C.*, No. 6:15-cv-01589-DCC, 2020 WL 1065955, at *6–9 (D.S.C. Mar. 5, 2020). Under such an analysis, Relators are entitled to costs and fees for their work on the intervened Anti-Kickback claims under § 3730(d)(1). They are also entitled to costs and fees for their work on non-intervened claims that were dismissed pursuant to the settlement (*i.e.,* Relator Sanborn's meaningful

However, we are informed that Athena is nevertheless challenging Relators' entitlement to attorneys' fees and costs on the grounds that they did not receive their portion of the relator share payment directly from the United States, but rather indirectly through Relator Sanborn. This argument runs contrary to the text and public policy of the fee shifting provision. As such, such argument was convincingly and rightly rejected in *United States ex rel. Doghramji v. Community Health Systems, Inc*., Case 3:14-cv-02160, Document 202, 2020 WL 1640423 (M.D. Tenn. April 1, 2020), *appeal pending*,  United States Court of Appeals for the Sixth Circuit, Case: 20-5637:

> The Government intervened in and settled all four of the consolidated cases. Thus, the Government "proceeded with" each case consolidated before us…
>
> Section 3730(d) contains two "shall" statements that form the backbone of the parties' dispute: (1) "If the Government proceeds with an action brought by a person under subsection (b), such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement . . . "; (2) "Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). ..
>
> Several statutory clues indicate that there is no requirement that a relator receive the statutory share in order to receive her attorney's fees. First, the phrase "such person" appears in both designations of eligibility for the relator's share and attorney's fees. *See U.S. ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1045 (6th Cir. 1994). In the relator's share phrase, "such person" is modified by a reference to § 3730(b), "[a]ctions by private persons." 31 U.S.C. § 3730(b). Thus, the repetition of "such person" conveys the same requirement for attorney's fees as for the relator's share: the requesting party must qualify as a private person who can bring a *qui tam* claim under § 3730(b). *See Taxpayers Against Fraud*, 41 F.3d at 1045 (describing the parallel structure of the two sections). Second, there is a single enumerated condition that spells out the requirements for relator's recovery of both her share and her fees: "If the Government proceeds with an action. . . ." No other conditional phrasing appears in this section. In other words, when Congress wanted to create a condition, it knew how to do

---

use claim and Relators Lovell and McKusick's billing claim) under § 3730(d)(2), which provides that "If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive . . .  an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant."  Because resolution of this issue proceeds identically regardless of which interpretation of "action" this court employs, this memo analyzes the issue under § 3730(d)(1).

it. There is no reason to believe Congress implicitly required receipt of the relator's share in order to receive a recovery for attorney's fees. Finally, the fact that relators contracted to reduce their share of the recovery below the statutory threshold to encourage settlement does not vitiate their interest in recovering their costs. *See Taxpayers Against Fraud*, 41 F.3d at 1047. *Holding otherwise would discourage settlement and frustrate the goal of reducing protracted litigation implicit in the assignment of attorney's fees and costs to FCA defendants.*

*Id*. at 1-2 (emphasis added). *See also United States ex rel. Rafter H Construction, LLC v. Big-D Construction Corp.*, 350 F. Supp.3d 938, 940-41 (D. Idaho 2018), on reconsideration, 2019 WL 286717 (D. Idaho 2019) (where government elected to intervene and subsequently settled both *qui tam* actions, the FCA "mandates that Plaintiffs receive a share of the proceeds as well as their reasonable costs and attorney fees."). *See generally* TAFEF Brief at pp. 9-16, 25-26 attached hereto as **Exhibit B** (explaining textual and policy reasons for mandatory fee shifting when government intervenes in one or multiple *qui tam* actions and the government is successful through settlement or judgment).

Nevertheless, some district courts have reached a different conclusion, holding that a relator who recovered a share indirectly from the government was barred from recovering attorneys' fees and costs. *See United States ex rel. McNeil v. Jolly*, 451 F. Supp.3d 657 (E.D. Louisiana 2020); *United States ex rel. Greenwald v. Kool Smiles Dentistry, PC*, 2018 WL 4356744, at *3 (D. Conn. Sept. 12, 2018); *United States v. NextCare, Inc.*, 2013 WL 431828, at *2 (W.D.N.C. Feb. 4, 2013). We expect Athena to rely on these cases, but these cases are not binding on this Court and are, we believe, at odds with the text and purpose of the FCA fee

shifting provision.[4]  The better analysis of the statutory text and public policy is we believe that of the district court in *Doghramji* cited above.

This Court's analysis in *United States ex rel. Allstate Insurance Company et al. v. Millennium Laboratories, Inc.,* 464 F. Supp.3d 449, 453- 454 (D. Mass. 2020), compels the conclusion that when the "*government successfully intervene[s]* in a relator's case that relator is entitled to a payment of costs and fees under § 3730(d)(1).  In that case, this Court correctly interpreted the law and held under the facts of that case that the relators were not entitled to fees and costs because the government *did not intervene* in Allstate's action, and there was publicity around the government investigation prior to the Allstate relators filing their action. Accordingly, this Court correctly framed the issue as: "Whether the Allstate Relators are entitled to recover attorneys' fees is, therefore, dependent upon whether they brought an action pursuant to § 3730(b) *in which the government successfully intervened* and thereby meet the criteria set forth in the first sentence of § 3730(d)(1)." *Id.* at 453 (emphasis added).  On the specific facts of that case, the Court concluded that the Allstate Relators did not satisfy the criteria for an award under § 3730(d)(1).[5]  Here, however, the government did successfully intervene and "thereby meet the criteria set forth in the first sentence of § 3730(d)(1)" thus entitling these Relators to payment of

---

[4] Moreover, in none of those cases did the settlement agreement the defendant signed acknowledge, as it does here, that "It is understood by all parties that Relators have reached their own agreement regarding respective shares of any funds paid by the United States … ." *See* **Exhibit A** (Settlement Agreement) at ¶ 5.

[5] The Court also concluded that after years of litigation among the three relators in whose cases the government *had intervened*, the First Circuit had adjudicated first-to-file on a claim-by-claim basis and held that a single relator was first to file on *all* the claims the government had settled with Millennium, and thus entitled to a relator share. However as explained, *infra*, we think that this analysis is limited to cases in which the court has adjudicated first to file issues *before* the fee litigation and does not represent a free-standing right of defendants to raise merits challenges to FCA complaints after having settled their primary liability.  *See United States v. Millenium Lab'ys, Inc.,* 923 F.3d 240 (1st Cir. 2019), *cert. denied sub nom. Est. of Cunningham v. McGuire*, 140 S. Ct. 851, 205 L. Ed. 2d 464 (2020) (finding that the first-to-file bar is non-jurisdictional).

costs and fees. Moreover, to our knowledge, the parties to that case failed to apprise this Court of the *Doghramji* decision cited above (decided two months before *Allstate*). In any event, the fundamental distinctions between *Allstate* and the present case that counsel a different result here.

In light of these facts, this Court found unavailing Allstate's argument that its claimed "private sharing agreement" with the adjudicated first to file relator somehow entitled it to fees. *See* 464 F. Supp.3d at 454 (citing *NextCare, Inc., supra)*.  As in *NextCare*, the Allstate relators' private agreement was not referenced in the government's settlement agreement with the defendant. *See* 464 F. Supp.3d at 454 and fn.3, *supra*. Indeed, as this Court noted: "Unlike typical FCA settlements, the Settlement Agreement does not address the question of how the relator's share should be apportioned among the several relators." *Id.* at 452.

Moreover, by the time of this Court's decision, unlike here, the first to file/share question had been litigated for several years and only one relator was determined to be entitled to a share. *Id*. at 453-454 ("There can be only one first filer and the First Circuit has definitely determined it is McGuire in this case … the [Allstate Relators] private agreement with McGuire does not render them 'first filers' or otherwise impact the First Circuit's decision"). Given that a first to file decision had already been made, this Court reasoned that the Allstate Relators "cannot demonstrate entitlement to recovery of the relator's share or, by extension, attorneys' fees." *Id*. at 454. *See also* fn. 5, *supra*.

In the course of its decision, this Court did interpret the FCA's fee shifting provision to require that a relator receive a share pursuant to the first sentence of that provision in order to be entitled to fees under the fourth sentence of that provision. *Id*. at 453. While we think this interpretation is at odds with the text and purpose of the provision for the reasons discussed

above, *see, e.g., Doghramji, supra,* and **Exhibit B**, we also believe it would not apply to a case

like this in which the government unquestionably "proceeds with" each action as required by §

3730(d)(1). Consider these differences between Allstate and the current case:

(1) ***Neither Action Here was a Tag-Along***:  Allstate filed its *qui tam* action almost five
years after the chronologically first filer (Cunningham), more than two years after the
relator the First Circuit ultimately determined was the "first to file relator"
(McGuire), and almost two years after the news media began reporting on the
government investigation of Millennium. In addition, the government did not
intervene in Allstate's action. Under these circumstances, this Court was rightfully
concerned about awarding fees for a "tagalong" matter. In contrast, here, the Relators
filed their action less than two months after the Relator Sanborn, with no knowledge
of Sanborn's action or any investigation, after having contacted the government pre-
filing, and the government investigated the actions together including by interviewing
Relators and issuing its first demand for discovery (an FCA Civil Investigative
Demand) some 7-8 months after the cases were filed. *See generally* Substitute
Declaration of Durrell and Declaration of Schlichter (Dkt. 78-1).

(2) ***The Settlement Agreement Here Expressly Contemplated the Sharing Agreement***:
In Allstate, the Relator was a party to the settlement agreement (along with all the
other relators), *but there was no reference in the agreement to a sharing agreement
among Relators or how the relator's share should be apportioned among the several
relators*. *See also* fn. 3, *supra*. Indeed, it was anticipated that which relator was
entitled to a share might have to be determined by a court—and indeed it was.   In
contrast, here, not only were Relators parties to the settlement agreement with the
United States and Athena and Relator Sanborn, but that agreement made clear that
while Relators were reserving their rights on share as to the United States, it was
"Understood by all parties that Relators have reached their own agreement regarding
their respective shares of any funds paid by the United States to Relator Sanborn."
*See* **Exhibit A** (Settlement Agreement) at ¶ 5. Relators negotiated share together with
DOJ. *See also* ¶ 13 referring to *Relators'* claims for a share of the proceeds of this
Agreement under (d)(1).  All Relators did receive a portion of the share paid by the
government. *See generally* Substitute Declaration of Durrell and Declaration of
Schlichter.

(3) ***There Has Been No Predetermination Of First To File Here:*** In Allstate, the First
Circuit ultimately determined which Relator was the first to file on the claims settled
by the United States and thus entitled to the share. In contrast, here, no adjudication
of the issue was necessary.  Here, the Relators resolved their respective claims to
share and the Settlement Agreement and all Parties acknowledged that prior to
dismissal of the actions with prejudice. The relators' sharing agreement simply
allowed the government and relator to agree on the share without addressing or

resolving any "first to file" issues under 31 U.S.C. § 3730(b)(5). Similarly, Athena chose to enter a settlement agreement with all Relators rather than litigate.

In short, it is one thing to deny fees and costs to a relator such as Allstate when there is no intervention, it was a tag-along late filed suit, and the courts had already spent years adjudicating relators' dispute about first to file, but it is wholly different to do so here where, as here, there was an intervention, the two *qui tam* cases were filed under seal close in time and investigated and settled together, and no first to file determination was made because the parties chose to resolve any dispute to more efficiently consummate a settlement that the United States and Athena wanted. Once a defendant settles the merits of a case, and the case is dismissed, a defendant should no longer be allowed to raise arguments about non-jurisdictional issues it might have pursued against a relator if it had not settled the case, such as first to file under 31 U.S.C. § 3730(b)(5).[6]

        To hold otherwise, i.e. that the present Relators, in these circumstances, are not entitled to attorneys' fees and costs from Athena would lead to dangerous unintended consequences. These consequences are compellingly described in Declarations by experienced and successful relators' counsel, and an accomplished former government health care fraud prosecutor filed herewith. *See* Declarations of Robert Patten (former Commonwealth of Massachusetts Assistant Attorney General), Michael Behn (relators' counsel for almost thirty years), and Royston Delaney (relators' counsel for almost twenty years); *see also* Substitute Declaration of Durrell (former

---

[6] *See* TAFEF Amicus Brief at 22 (Under the fee shifting provision, "Relators are 'such persons' who brought their cases under subsection (b), remained such persons as parties after intervention under (c)(1) and are entitled to recover share and fees under (d)(1). Whether Relators' cases could have been dismissed for any number of reasons in litigation including failure to state a claim, is a moot point once the Defendant decided to settle their cases").

Assistant U.S. Attorney, representing relators for over twenty years, and undersigned counsel for Relators in this action). *See generally* TAFEF Amicus Brief, *supra*.

First, it would unnecessarily entangle and burden the courts with perhaps years of litigation over first-to-file and potentially other non-jurisdictional issues such as the FCA's public disclosure bar or Fed. R. Civ. P. Rule 9(b)), before a case settles, or *after* a case has settled and been dismissed with prejudice. *See, e.g.*, *Doghramji*, *supra*, 2020 WL 1640423 at 2-5 (after the Court correctly interpreted the statutory text of the FCA fee shifting provision finding that it does not require the relator to receive a relator share directly from the government to be entitled to fees, the court then engaged in a post-settlement determination that under the first-to-file and/or public disclosure provisions of the FCA, 31 U.S.C. §§ 3730(b)(5) and (e)(4), certain relators who were parties to a multi-million dollar settlement were not entitled to fees). This district court decision, which is on appeal to the Sixth Circuit, *see supra*, came some *six* years after the United States, the defendant, and the multiple relators settled the underlying FCA cases.

Second, such an interpretation would undermine the effectiveness of the government's to date highly successful efforts in prosecuting fraud and recovering money under the FCA, largely through *qui tam* actions. It would regularly require courts to resolve first-to file issues under 31 U.S.C. § 3730(b)(5) (and potentially other issues such as public disclosure) in **every** multiple relator case, even after the main action had settled (with the government and the defendant recognizing that resolution in return for *all* relators joining the settlement and releasing defendant and dismissing all claims with prejudice).  It would also regularly require the government to involve itself in these post-resolution collateral actions and divulge potentially privileged information about its investigation and litigation strategy.  Such litigation among relators could be pre- or post-government intervention and may need to occur while the cases are

under seal.  This would have the perverse and unintended effect of discouraging the very persons and attorneys that Congress wanted to incentivize to report and pursue *qui tam* cases when it overhauled the FCA in 1986.

While this infighting among relators might seem appealing to a defendant, it would burden the courts and take government and relator resources away from investigating the allegations of fraud against the defendant and reaching a settlement. As explained in the Declarations cited above, having all the affected relators participating in the investigation of the defendant strengthens the government's hand. A settlement with the defendant furthers the purposes of the FCA and the interests of the government, the defendant (who as part of a settlement wants, as Athena did here, releases of defendant and dismissals of all claims— intervened or non-intervened), and the courts. If instead, courts would have to adjudicate which of many relators is first-to-file on the claims the government proposes to settle before the government could effectively settle those cases with the defendant, there will be lengthy delays. At the same time, allowing a defendant to settle intervened *qui tam* actions, obtain a release and dismissal with prejudice of Relators' non-intervened claims as part of the consideration for the settlement, and then refuse to pay Relators' expenses and fees, undermines the text and policy of the FCA.  If the defendant wants to raise a non-jurisdictional challenge to a relator's complaint, it should be required to do so pre-settlement, and not allowed to raise it post-settlement; such challenges are merits defenses and a defendant can no more adjudicate them post-settlement, than it can challenge its liability for the conduct it settled.

In short, if Relators such as Lovell and McKusick are barred from recovering their attorneys' fees, costs and expenses after the settlement of their *qui tam* action, it would upset the balance Congress so effectively struck when it amended the FCA in 1986. That overhaul of the

**Substitute Memorandum of Points and Authorities in Support of Substitute Motion for Award of Expenses, Attorneys' Fees and Costs - 15**

FCA has resulted in over $64 billion in recoveries since then, mostly from *qui tam*/whistleblower cases. It would cause unnecessary and burdensome litigation, undermine government investigations and settlement of multiple relator cases, and have a chilling effect on relators' counsel's willingness to represent *qui tam* relators. *See generally* Declarations of Robert Patten, Michael Behn, Royston Delaney, and Suzanne Durrell; TAFEF Amicus Brief (Exhibit B).

Accordingly, Relators Lovell and McKusick respectfully submit that in this case, on these facts, this Court should find they are entitled to an award of reasonable attorneys' fees, expenses, and costs from Athena.

## II.   The Amount of Relators' Fees, Costs, and Expenses is Reasonable

Determination of the amount of reasonable fees to be awarded against Athena is guided by black-letter law under which the federal courts use an adjusted lodestar methodology. *See generally Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886 (1984); *García-Rubiera v. Fortuño*, 727 F.3d 102, 116 (1st Cir. 2013); *Coutin v. Young & Rubicam P.R. Inc.*, 124 F.3d 331, 337 (1st Cir. 1997); *United States ex rel. Averback v. Pastor Med. Assocs. P.C.*, 224 F. Supp. 2d 342, 350 (D. Mass. 2002).  The "lodestar" is defined as the number of hours reasonably expended multiplied by the reasonable hourly rates of the timekeepers).

The lodestar calculation is presumed to represent a "reasonable fee" although it may be adjusted under certain circumstances. This method is used to provide "an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. It "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case;" and it "cabins the discretion of trial judges, permits meaningful judicial

review, and produces reasonably predictable results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-552 (2010).

### A.  The Hourly Rates Claimed are Reasonable

To determine the appropriate hourly rates, the court "looks to 'the prevailing market rates in the relevant community." *Perdue*, 130 S. Ct. at 1672 (quoting *Blum*, 465 U.S. at 895), taking into account the fee claimants' skills, knowledge, experience and reputation forming the basis for claimed hourly rates; and the prevailing rates in the community for similarly qualified attorneys. *Averback,* 224 F. Supp.2d at 353. *See Blum*, 465 U.S. at 895-96 n. 11; *Calhoun v. Acme Cleveland Corp*., 801 F.2d 558, 560 (1st Cir. 1986). To compensate for delay in payment, statutory attorneys' fees should be calculated using hourly rates current to the year of recovery. *Perdue*, 559 U.S. at 555; *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). Courts in the First Circuit award fees at current rates. *See*, *e.g.*, *Connolly v. Harrelson*, 33 F. Supp. 2d 92, 98 n.5 (D. Mass. 1999) ("awarding fees based upon current billing rates, as the Court does in this case, is one accepted means of compensating for a delay in payment").[7]

The rates claimed on behalf of the firms and attorneys and staff representing Relators Lovell and McKusick, as detailed are summarized in the Substitute Declaration of Durrell (at ¶¶ 42-55).  The qualifications and experience of the timekeepers which justify the claimed rates is detailed in the Durrell Substitute Declaration (at ¶¶ 42-55), and in the Declarations of Robert W. Liles and Paul Weidenfeld filed herewith.  Further, the Declaration of Jeremy Friedman (Dkt.

---

[7]*See also, e.g.*, *McMillan v. Mass. SPCA*, 1996 U.S. Dist. LEXIS 22258, at *6 (D. Mass. 1996) ("use of current, rather than historic rates, is a fair means of taking into account the inevitable delay in recouping an award of fees) (citing *Cordero v. De Jesus-Mendez*, 922 F.2d 11, 19 (1st Cir. 1990)). Counsel's rates should be adjusted upward for an award recovered after 2020. *See Amico v. New Castle Cty*., 654 F. Supp. 982, 1003-04 (D. Del. 1987) ("A multiplier of .135 will be allowed by the Court to compensate for any delay in payment").

78-2 at e.g., ¶¶ 23-24, 38) and the Substitute Declaration of Durrell filed herewith (at ¶¶ 42-55),

explain and justify the reasonableness of the rates claimed by the attorneys and paralegals

working on this case. *See also* Declarations of Patten (at ¶ 9), Behn (at ¶ 8), and Delaney (at ¶ 8)

filed herewith.

### B.  The Hours Claimed are Reasonable

As to the reasonableness of hours expended in the litigation, one determines the number

of hours actually spent and then subtracts from that figure hours which were duplicative,

unproductive, excessive, or otherwise unnecessary." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945,

950 (1st Cir. 1984). Only those hours where "counsel substantially exceeded the bounds of

reasonable effort" should be subtracted. *United States v. Metro Dist. Comm'n,* 847 F.2d

12, 17 (1st Cir. 1988); *see Averback*, 224 F. Supp. 2d at 351. Time spent on non-intervened

claims, such as the billing claim in the McKusick and Lovell *qui tam* action and the meaningful

use claim in the Sanborn *qui tam* action, are rightfully included. *See, e.g*., *Averback*, 224 F.

Supp. 2d at 35 n. 7 (rejecting argument that 31 U.S.C. § 3731(d)(1) fees, costs, and expenses are

unavailable for work related to released claims on which the government did not intervene).[8]

Ordinarily courts should defer to the fee claimant's judgment as to the reasonableness of,

and necessity for, the work. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)

("By and large, the court should defer to the winning lawyer's professional judgment as to how

much time he was required to spend on the case"); *Norman v. Hous. Auth. of Montgomery*, 836

---

[8] *See also, e.g.*, *U.S. ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938 (7th Cir. 1996); *United States ex rel. Hernandez v. Therapy Providers*, No. 06-CV-0760, 2014 WL 5282436 *4 (N.D. Ill. Oct. 14, 2014); *U.S. ex rel. Poulton v. Anesthesia Assocs. of Burlington, Inc.*, 87 F. Supp. 2d 351, 357 (D. Vt. 2000). As the U.S. Supreme Court has held, where the words "prevailing party" are absent from a fee-shifting statute, as in 31 U.S.C. § 3731(d)(1), "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fee award." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010) (citation omitted).

F.2d 1292, 1306 (11th Cir. 1988) ("The measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done").

Like other fee shifting statutes, the False Claims Act also entitles Relators' counsel to fees for work establishing, and collecting, their reasonable fees. *See United States ex rel. Simring v. Univ. Physician*, 2013 U.S. Dist. LEXIS 179451 *4 (D.N.J. 2013). The First Circuit has recognized that: "It would be inconsistent with the purpose of [statute] to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee." *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978). *See also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981-983 (9th Cir. 2008) ("Fees on fees" must be determined by the same lodestar methodology, and downward adjustments are to be used only in "rare" cases).

The time claimed in this case by the four attorneys and three paralegals totals 1,184.45 hours. The Substitute Declaration of Durrell (at ¶¶ 56-67), and the Declarations of Liles and Weidenfeld filed herewith (all with time records attached as Exhibits) detail the hours claimed and the reasonableness of the work. As attested to in these Declarations, Relators' counsel spent significant amounts of time on this case. *See also* Declarations of Behn (at ¶¶ 11-12) and Delaney (at ¶ 13) filed herewith; Declaration of Jeremy Friedman (Dkt. 78-2) ¶ 39.

**C.  The Costs and Expenses Claimed by Relators are Reasonable**

Relators are also entitled to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' … costs." 31 U.S.C. § 3730(d)(1). Relators' reasonable costs and expenses as of March 31, 2021 total $4,388.14, as

detailed and justified in the Substitute Declaration of Durrell (at ¶¶ 68-72) filed herewith. *See also* Declarations of Liles (at ¶ 11 and Exhibit B) and Weidenfeld (at ¶ 20).

## **CONCLUSION**

For the reasons discussed above, Relators Lovell and McKusick respectfully submit that they are entitled to an award of reasonable attorneys' fees, costs, and expenses from Athena, with the amount to be determined by this Court.

Date: April 16, 2021                    Respectfully submitted,

**RELATORS CHERYL LOVELL AND WILLIAM MCKUSICK**

/s/ *Suzanne E. Durrell*
Suzanne E. Durrell (BBO #139280)
Email: suzanne@whistleblowerllc.com
Linda C. Severin (BBO #674535)
Email: linda@whistleblowerllc.com
WHISTLEBLOWER LAW COLLABORATIVE LLC
20 Park Plaza, Suite 438
Boston, MA  02116-4334
Tel: (617) 366-2800

*Counsel for Relators Lovell and McKusick*