UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. Geordie Sanborn, Cheryl Lovell, and William McKusick, <br><br>          Plaintiffs, <br>v. <br><br>ATHENAHEALTH, INC., <br><br>          Defendant. | No. 17-cv-12125-NMG <br>No. 17-cv-12543-NMG |

**DEFENDANT ATHENAHEALTH'S OPPOSITION TO
RELATORS LOVELL AND MCKUSICK'S MOTION FOR REASONABLE EXPENSES,
ATTORNEYS' FEES, AND COSTS PURSUANT TO 31 U.S.C. § 3730(d)(1)**

Defendant athenahealth, Inc. ("Athena") opposes the motion of Relators Cheryl Lovell and William McKusick ("Lovell and McKusick") for attorneys' fees, costs, and expenses in its entirety. Lovell and McKusick are not prevailing relators as required for them to recover attorneys' fees and costs under the fee-shifting provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(d)(1). They were not the first to file a *qui tam* complaint with respect to any issue as to which the government intervened and recovered from Athena and did not receive a relator's share of the settlement proceeds. This precludes them from recovering any fees and costs from Athena. Furthermore, even if Lovell and McKusick were entitled to fees and costs (and they are not), they have not carried their burden to establish the reasonableness of their fees. To the contrary, their fee claim—in which they seek more than $1,000,000 in fees and costs—is grossly excessive and based upon time entries that are facially inadequate in a variety of ways. Lovell and McKusick's motion should be denied.

1


## BACKGROUND

Lovell and McKusick's fee claim relates to Athena's settlement with the government (specifically the U.S. Attorney's Office for the District of Massachusetts and the Department of Justice's Civil Division) of alleged Anti-Kickback Statute ("AKS") violations arising out of three of its marketing programs. The substantive allegations included in the government's Complaint-in-Intervention and subsequent settlement (the "Covered Conduct") first appeared in a *qui tam* complaint filed on October 30, 2017 by Relator Geordie Sanborn ("Sanborn") (Case No. 17-cv-12125-NMG). Lovell and McKusick included many of the same allegations in a *qui tam* complaint filed on December 22, 2017, almost exactly two months later.[1] Lovell and McKusick, therefore, were not first to file, as demonstrated by the fact that only Sanborn received a relator's share under the settlement agreement, and they were not the first ones to raise any of the allegations in the Covered Conduct. Lovell and McKusick do not contend otherwise.

In his October 2017 complaint, Sanborn alleged that Athena paid kickbacks to customers through marketing programs to induce sales of its electronic health record ("EHR") technology in violation of the AKS (the "AKS claim"). Specifically, Sanborn alleged that Athena paid incentive payments to current customers that referred new customers to Athena (as set forth in the settlement agreement, these payments were made pursuant to Client Lead Generation agreements). Lovell-McKusick Opening Brief ("Br.") *Exhibit A;* ECF. No. 1, ¶¶ 59–71. Sanborn also alleged that Athena paid unlawful "gratuities" to current and prospective customers, including trips to sporting events (these "gratuities" are described as "Concierge Events" in the settlement agreement). *See id.* Sanborn's counsel later identified another Athena marketing program to the government pursuant to which Athena paid other health information technology ("HIT") providers to refer

---
[1] Lovell and McKusick filed an amended complaint on April 18, 2018 which made the same allegations. *See* Case No. 17-cv-12532-NMG, ECF No. 11.

customers to Athena (as described in the settlement agreement, these payments were made pursuant to "Conversion Deal" agreements).[2] *See* Br. *Exhibit A*; Walters Aff. ¶ 7.

In their December 2017 complaint, Lovell and McKusick, like Sanborn, also alleged that Athena paid kickbacks to current customers via the Client Lead Generation program. Case No. 17-cv-12543-NMG, ECF No. 2 ¶¶ 107–148. Lovell and McKusick further alleged that Athena employed billing systems and audit functions that contained flaws that resulted in the submission of false claims to the government ("billing claim"). *Id.* ¶¶ 57–106.

The government investigated Sanborn's allegations over the course of approximately two years, during which time Sanborn's and Lovell and McKusick's complaints (collectively, the "Relators") remained under seal. Walters Aff. ¶ 3. The government's investigation was active, and included requesting and receiving more than 1.8 million documents, and meeting and negotiating with counsel for Athena regarding substantive issues. *Id.* ¶ 4. Although the government did initially request documents and information regarding the certification process for Athena's EHR technology, all of its substantive questions for, and discussions with, Athena's counsel related to Athena's marketing programs and issues that, in the government's view, presented potential AKS violations. *Id.* ¶¶ 3–4. Significantly, the government did not even ask Athena for documents or information related to Lovell and McKusick's billing claim—the only arguably unique portion of their complaint. *Id.* Athena's counsel had no dealings with any Relators' counsel until after an agreement in principle was negotiated with the government. *Id.* ¶ 5.

That agreement in principle was reached on September 22, 2020. *Id.* ¶ 6. After lengthy negotiations with the government concerning certain settlement details having nothing to do with

---

[2] Relator Sanborn separately filed a Motion for Attorneys' Fees, ECF Nos. 77, 78. Athena agrees that Sanborn is entitled to a portion of the fees he is claiming.

3

any of the Relators, and in which counsel for the Relators were not involved, the government filed its Complaint-in-Intervention on January 25, 2021, ECF No. 60, and the settlement agreement in this matter was signed on January 27, 2021. Br. *Exhibit A.*

The Complaint-in-Intervention, the allegations of which are incorporated into the settlement agreement as Covered Conduct, included one FCA claim based solely on three of Athena's marketing programs, which the government alleged violated the AKS ("AKS claim"). ECF No. 60 ¶¶ 71–74. There was no claim even tangentially related to Lovell and McKusick's billing claim.

Pursuant to the settlement agreement, Athena paid $18,250,000 to the United States. Only Relator Sanborn received "funds paid by the United States" (i.e. relator's share). Br. *Exhibit* A at ¶5. Sanborn and Lovell and McKusick apparently came to a private sharing agreement to divide the relator's share. *Id.*

**ARGUMENT**

Only successful relators are entitled to receive attorneys' fees and costs under the FCA. The relevant relators' share and fee provision of the FCA provides:

> If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. … Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C § 3730(d)(1). Lovell and McKusick are not entitled to attorneys' fees for two independent reasons: (1) they were not first to file their AKS claim, the only claim in which the government intervened; and (2) they did not receive a relator's share of the settlement proceeds

from the government. Their failure to satisfy even one of these requirements bars them from recovering fees under § 3730(d)(1). Here, of course, they satisfy neither. Even if Lovell and McKusick could overcome the legal barrier to their receipt of attorneys' fees—and they cannot— they cannot carry their burden of establishing the reasonableness of their fees.

**I. Lovell and McKusick are Not Entitled to Fees and Costs**

    A.    <u>Lovell and McKusick Were not First to File</u>

Lovell and McKusick are not entitled to recover attorneys' fees and costs because they were not the first to file under § 3730(b)(5) of the FCA. *See* 31 U.S.C § 3730(b)(5) (providing that, when a person brings a claim under the FCA, only the government is entitled to "intervene or bring a related action based on the facts underlying the pending action"). The case law is clear: relators who are not first to file are not entitled to recover attorneys' fees. *United States ex rel. Allstate Ins. Co. v. Millennium Labs., Inc.*, 464 F. Supp. 3d 449, 454 (D. Mass. 2020) (denying fee claim of relator that was not first to file); *United States ex rel. Doghramji v. Community. Health Systems, Inc.*, No. 3:11 C 442, 2020 WL 1640423, at *2–4 (M.D. Tenn. Apr. 1, 2020) (finding that relators' claims for fees were barred under first-to-file rule).

As this Court recently held, relators who are not first to file, and do not receive a relator's share of the settlement proceeds from the government, are not entitled to fees and expenses under § 3730(d)(1). *See Allstate,* 464 F. Supp. 3d at 453. As the Court explained:

> [O]nly one relator action can satisfy the criteria of § 3730(b) because the "first-to-file" rule bars any person other than the government from bringing an action based on the underlying facts of a pending action. Because bringing an action pursuant to § 3730(b) is a prerequisite to recovery under § 3730(d)(1), the First Circuit held that "only the first-to-file relator can claim the relator's share"…[O]nly a first filer meets the criteria set forth in the first sentence of § 3730(d)(1). As a result, only a first filer can receive payments pursuant to that sentence and, therefore, qualify as "any such person" entitled to fees pursuant to the fourth sentence.

*Id.* (citations omitted)

In *Allstate*, the government intervened in several *qui tam* actions involving multiple relators. The government then settled with the defendant and, through post-settlement litigation, it was determined that only one relator was the first to file and therefore entitled to the relator's share of the settlement proceeds. *Id.* at 451. The first-to-file relator, however, also entered into a private sharing agreement with some of the other relators, including the relators seeking fees, to divide the relator's share. *Id.* This Court held that because the relators moving for attorneys' fees were not first to file, they were not entitled to attorneys' fees. *Id.* at 454. The Court also noted that the moving relators' claim for fees "fail[ed] for the additional reason that the government declined to proceed with their complaint." *Id.*

Lovell and McKusick were not the first to file with respect to any of the allegations in which the government intervened and that formed the basis for the Covered Conduct in the settlement agreement. *See* 31 U.S.C. 3730(b)(5). Sanborn was. The government intervened with respect to only three issues that gave rise to the AKS claim, all of which were first identified by Sanborn. Lovell and McKusick were not first to file with respect to any of the allegations supporting the claim in which the government intervened and, under the Court's analysis in *Allstate,* are not entitled to attorneys' fees. *See* 464 F. Supp. 3d at 454.

Lovell and McKusick make a desperate attempt to distinguish *Allstate*, arguing that the Court denied attorneys' fees in that case because the government declined to intervene in the relators' complaint. But that is not what the Court held. The Court's analysis was very clear—the relators that were not first to file were not entitled to attorneys' fees. *Id.* at 454. The Court went on to note that the government's lack of intervention was a further reason to deny the claim, but the first-to-file bar was the deciding factor. *Id.*

Recognizing the frailties in their attempt to distinguish *Allstate*, Lovell and McKusick also

6

ask this Court to reconsider, and indeed overrule, that decision by creating an unprecedented exception to the first-to-file rule for unsuccessful relators that have entered into a private sharing agreement that is referenced in the settlement agreement. Br. at 12. Of course, the *Allstate* relators *also* entered into a private sharing agreement that, as the Court held, had no bearing on their entitlement to fees. 464 F. Supp. 3d at 454 (that relators "will receive proceeds from the relator's share by operation of their private agreement with [the prevailing relator] does not render them "first filers. . ."). The fact that the private sharing agreement was referenced in the settlement agreement does not change Lovell and McKusick's standing on the two matters that are relevant to the issue of attorneys' fees—they were not first to file and they did not receive a relator's share. The Court should reject their proposed exception to the first-to-file rule.

Lovell and McKusick's policy arguments railing against the first-to-file rule, likewise, are misplaced. They dedicate no fewer than four pages of their brief warning of dire consequences and inequities, including the threat of protracted litigation, if this Court continues to follow its own precedent, and that of so many other courts, enforcing the first-to-file rule. Br. 12–16. The first-to-file rule is actually very simple, and should decrease the likelihood of protracted litigation over the reasonableness of the attorneys' fees incurred by multiple relators. Nor is there any unfairness in denying fees when, as here, the second action includes precisely the same allegations as the first, or, also as here, includes allegations that were not even investigated by the government. Indeed, through their private sharing agreement, Lovell and McKusick received benefits from the filing of their complaint, but they are not entitled to a further windfall by charging Athena for fees incurred in connection with bringing an action that is barred under the FCA itself. *See* 31 U.S.C. § 3730(b)(5). Indeed, as this Court recognized in *Allstate*, the policy considerations behind the first-to-file rule far outweigh any of Lovell and McKusick's arguments to the contrary. *See* 464

F. Supp. 3d at 454. As the Court stated, "Congress could not have intended for a plaintiff, who is not the first filer and, therefore, not entitled to the relator's share, to be guaranteed recovery of attorneys' fees. Interpreting § 3730(d)(1) in such a manner would incentivize tag-along suits brought by relators seeking a large recovery with minimal risk of incurring substantial attorneys' fees and costs." Because Lovell and McKusick were not first to file, their motion should be denied in its entirety.

### B. Lovell and McKusick Did Not Receive a Relator's Share

Lovell and McKusick's fee claim also fails because they did not receive a relator's share of the proceeds of the settlement from the government. "The plain language of the FCA demonstrates that a relator is only entitled to attorneys' fees if that relator also obtained a relator's share following a court award or settlement." *United States v. NextCare, Inc.*, No. 3:11CV141, 2013 WL 431828, at *2 (W.D.N.C. Feb. 4, 2013); see also M*iller v. Holzmann*, 575 F. Supp. 2d 2, 9 (D.D.C. 2008) (holding that only prevailing parties can recover fees), amended in part, vacated in part sub nom. Any private sharing agreement between the relators is immaterial under the FCA. Lovell and McKusick did *not* receive a relator's share from the government, and thus are not considered prevailing relators and are not entitled to attorneys' fees. *See United States ex rel McNeil v. Jolly*, 451 F.Supp.3d 657, 668–69 (E.D. La. 2020); *NextCare,* 2013 WL 431828 at *3.

Receiving a share of the proceeds through a private agreement outside of the settlement does not make a relator eligible to receive attorneys' fees. For example, in *Nextcare*, the defendant, Nextcare, settled with the government. 2013 WL 431828, at *1. The two relators, who asserted nearly identical claims, joined the settlement. One of the two relators, Granger, received a relator's share in connection with the settlement agreement because her complaint was filed first. Nextcare paid her fees and costs. The government intervened and dismissed both her case and that of the

8

other relator, Saidiani. When Saidiani attempted to recover fees, the court rejected his claim, holding:

> There is no dispute that the Federal and State Settlement Agreements reference only Relator Granger as receiving a Relator's share of the settlement proceeds. Accordingly, Saidiani recovered nothing pursuant to those agreements. However, in the latter part of 2011, Saidiani and Granger had entered into a separate private agreement between themselves to share any proceeds that resulted from the litigation. Apparently, Saidiani is receiving a share of proceeds from Granger pursuant to this private agreement with Granger.
>
> Saidiani argues that because he and Relator Granger entered into this private agreement to share proceeds, that[*sic*] he should be considered a successful Relator who has "received" a Relator's share and is thus entitled to fees under the various state FCA statutes. Sadiani cites no caselaw in support of his position and the plain language of the statutory texts and the settlement agreements do not support such a claim.

2013 WL 431828 at *3.

Similarly, in *United States ex rel. Greenwald v. Kool Smiles Dentistry, PC*, the court held that a relator who was a party to the settlement agreement, but who did not receive any payment of a relator's share as part of the agreement, was not entitled to fees and costs. No. 10-1100, 2018 WL 4356744, at *3 (D. Conn. Sept. 12, 2018). In yet another case, *McNeil,* the court held that the group of relators who did not receive any proceeds from the settlement agreement or from the Relators Settlement Agreement, which explicitly provided relator shares to only two relators, were not entitled to an award of attorneys' fees, costs, and expenses. 451 F.Supp.3d at 668–69.

As Lovell and McKusick did not receive a payment from the proceeds of the settlement, they did not receive a relator's share. They are parties to the settlement agreement, which confirms that they did *not* receive a relator's share, in order to make clear that they brought an action that is covered by the agreement. *See Greenwald*, 2018 WL 4356744 at *2 (denying fee claim made by relator that was a party to the settlement agreement but did not receive a relator's share of the settlement proceeds). Their signatures on the agreement do not change their status in this matter,

but rather confirm their agreement that they did *not* receive the relator's share and were to receive fees *only* through a private sharing agreement with Sanborn. *Id.* Again, as this Court held in *Allstate*, the private sharing agreement does *not* render them "first filers" and they are not entitled to attorneys' fees. 464 F. Supp. 3d 449 at 454; *see also McNeil,* 451 F.Supp.3d at 668 ("While relators were not barred from entering into separate agreements as to the division of shares awarded to [prevailing relators]," the settlement agreement did not provide shares to moving relators and they were therefore not entitled to fees and costs); *NextCare,* 2013 WL 431828 at *\*3* (relator not entitled to recover attorneys' fees despite private sharing agreement with another relator who did receive payment under the settlement agreement).

Lovell and McKusick ask the Court to ignore its holding in *Allstate* and the analysis in these other cases in order to adopt the reasoning from *Doghramji*, a wrongly decided out-of-district case that held that a relator is not required to have received a relator's share through the settlement in order to be entitled to attorneys' fees. The court in *Doghramji* simply misinterpreted § 3730(d)(1); the statute clearly "tie[s] the entitlement to fees and costs to the 'person' receiving the Relator's Share." *NextCare*, 2013 WL 431828 at *2. Section 3730(d)(1) clearly states that any payment "to a person" shall be made from "the proceeds of the action or settlement," and that "any such person," shall also receive attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1). As court after court has found, "[t]he mandatory award of attorneys' fees, costs, and expenses does not apply to all persons who bring a qui tam action under § 3730(b), but rather only to those who receive a payment from its proceeds." *McNeil*, 451 F.Supp.3d at 668 (citing *NextCare*, 2013 WL 431828 at *2). Lovell and McKusick have provided little support for why the Court should ignore the plain language meaning of the statute and even its own precedent other than that they believe *Doghramji* is the "better analysis of the statutory text and public policy" (i.e. the more favorable

10

analysis to Lovell and McKusick). 2020 WL 1640423, at *2; Br. at 10. The Court should follow its own precedent, and the vast majority of other courts, requiring that a relator must receive proceeds from the settlement in order to recover attorneys' fees.

While the first-to-file rule bars Lovell and McKusick's fee claim, their claim also fails, and should be denied, because they did not receive a relator's share of the settlement proceeds.

## II. Lovell and McKusick's Fee Claim is Excessive and Unreasonable

Even if Lovell and McKusick could meet their burden to show that they are entitled to attorney's fees, which they cannot, their fee claim—of more than $1,000,000 in fees and costs—is grossly excessive, particularly because they failed to prevail on any claim and the billing records submitted by their counsel do not remotely support such a massive claim. Lovell and McKusick bear the burden of establishing the reasonableness of their fees. *U.S. ex rel. Averback v. Pastor Medical Assoc. P.C.*, 224 F. Supp. 2d 343, 353–56 (D. Mass. 2002). Courts use the lodestar methodology when determining the "reasonable" fees and costs to be awarded to a prevailing relator in a FCA action. *See, e.g.*, *United States ex rel. Emery v. Belcon Enterprises, Inc.*, No. 2:14-cv-00483-DBH, 2016 WL 7494855, at *2 (D. Me. 2016) (*citing Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015) (applying lodestar methodology). Under the lodestar approach, the Court determines the reasonable amount of time expended on the matter multiplied by the prevailing rate. *Id.* Hours spent on claims that are entirely unrelated to the successful claims in the Covered Conduct—as the billing claim is here—will be deducted from the overall fee award. *See, e.g.*, *U.S. ex rel. Zediker v. OrthoGeorgia*, 407 F. Supp. 3d 1330, 1349–51 (M.D. Ga. 2019). Similarly, fees associated with time entries that are vague, excessive and/or redundant will be excluded. *See, e.g., Belcon Enterprises, Inc.*, 2016 WL 7494855 at *2–8 (reducing fees owed to a relator based on excessive billing for the drafting of the complaint, teleconferences concerning "case status," vague

time entries, duplicated time entries for a single set of tasks, time billed incorrectly at attorney rather than paralegal rates, inclusion of administrative tasks that should be included in a law firm's overhead, entries described solely as "office work," and entries relating to claims against a party against whom the relator did not prevail); *see also Lipsett v. Blanco*, 975 F.2d 934, 938-39 (1st Cir. 1992); *Averback*, 224 F. Supp. 2d at 353–56.

      A.     <u>Lovell and McKusick Cannot Recover for Unsuccessful Claims</u>

Even if Lovell and McKusick were entitled to recover fees for their AKS claim, which they are not, Lovell and McKusick are not entitled to recover fees for time spent on their unsuccessful billing claim because the government declined to intervene on this claim, indeed it did not even investigate it, and it was not included within the Covered Conduct. *See, e.g.*, *Zediker*, 407 F. Supp. 3d at 1349–50; *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 786 F. Supp. 2d 110, 118 (D.D.C. 2011) (citations omitted) ("[N]o compensation should be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail."). Lovell and McKusick cannot recover any fees for work performed by their counsel in connection with this claim, which is based on completely separate factual and legal theories than the AKS claim.³ *Zediker*, 407 F. Supp. 3d at 1350 (describing unsuccessful claims brought by relator as "[un]related to what the [g]overnment ultimately brought as claims against [defendant]" and "based on separate legal theories from those on which the parties ultimately settled" and denying the relators request for additional fees); *Bill Harbert Intern. Const., Inc.*, 786 F. Supp. 2d at 118 ("Where such natural dividing lines exist, the Court immediately strikes fees incurred in pursuit of claims that are both unrelated and unsuccessful.").

---

³ As Sanborn seeks fees for his work on an unsuccessful claim, Athena further briefed this issue in its opposition to Sanborn's fee petition. *See Defendant athenahealth's Opposition to Relator Sanborn's Motion for Reasonable Expenses, Attorneys' Fees, and Costs Pursuant to 31 U.S.C. § 3730(d)* at pgs.5–14. As set forth therein, neither Sanborn nor Lovell and McKusick are entitled to fees for time spent on their distinct, unsuccessful claims.

In circumstances where a party is only partially successful, the court may either attempt to identify and eliminate specific hours spent on unsuccessful claims or reduce the award by some proportion. *Zediker*, 407 F. Supp. 3d at 1350 (citations omitted). Although some entries submitted by Lovell and McKusick's counsel do contain some level of detail, many of the entries submitted by counsel are vague and make it difficult to discern the claims to which the work relates. *See, e.g.*, Durrell Decl. Ex. 1 (January 23, 2018 entry for 7.75 hours to "Proof and edit mandatory disclosure"); *see also id.* ¶ 63, Fn. 3. As a result, Lovell and McKusick cannot carry their burden of establishing the fees attributable to the AKS claim, and the Court—if it is inclined to award any fees—should reduce the fees by a substantial proportion. *See, e.g., United States ex rel. Rai v. KS2 TX, P.C.*, No. 3:17-cv-834 (JBA), 2019 WL 1397290, at *7–*9 (D. Conn. 2019) (reducing the lodestar amount in part due to "insufficiently specific time entries," which were "too vague for a court to determine the reasonableness of the time spent" and noting that courts have reduced fee awards where time entries "do not refer to the specific matter worked on").

B. <u>Lovell and McKusick Cannot Recover for Fees Associated with Vague, Incomplete, Excessive, or Redundant Entries</u>

There are numerous examples throughout the records submitted by Lovell and McKusick's counsel of entries that are vague or incomplete or account for time that is excessive and unreasonable. For example, Lovell and McKusick's counsel billed for over 250 hours of time spent on the disclosures alone, amounting to $177,800.75 in fees. Walters Aff. Ex. C at 1–3; *see also* Durrell Decl. Ex. 1; Weidenfeld Decl. Ex. 1. Attorney Paul Weidenfeld, an experienced FCA attorney, claimed almost 30 hours for AKS legal research, amounting to $29,600 in fees. Walters Aff. Ex. C at 3–4; *see also* Weidenfeld Decl. Ex. 1 (*see, e.g.*, November 9, 2018 entry for 2.2 hours for "Research AKS issue"; May 5, 2020 entry for 3.2

13

hours for "Research various AKS issues"). Additionally, many of the 46.6 hours submitted by attorney Robert Liles, who billed almost $40,000 on this matter, are accompanied by what appear to be incomplete descriptions. Walters Aff. Ex. C at 4–5; *see also* Liles Decl. Ex. 1 (*see, e.g.*, April 12, 2018 entry for 9.6 hours for "Met with the relators prior to today's meeting and went over the likely issues to be discussed. Along with Suzanne Durrell, represented"). Courts have repeatedly held that relators are not entitled to recover when the records contain these sorts of deficiencies. *See, e.g.*, *Belcon Enterprises, Inc.*, 2016 WL 7494855 at *2–8. The records submitted by Lovell and McKusick in support of their massive fee claim are replete with such deficiencies and the Court should reduce the lodestar amount accordingly.

    C.    <u>Lovell and McKusick Cannot Recover for Non-Productive Attorney Travel Time or an Unnecessary Expert</u>

Lovell and McKusick's attorneys also billed over 40 hours for travel time amounting to $43,630 in fees, and the block billing in many of these entries makes it impossible to determine what percentage of this time, if any, was productive. Walters Aff. Ex. C at 5; *see also* Durrell Decl. Ex. 1 (*see, e.g.,* April 30, 2019 entry for 6.5 hours for "prepare for, travel to, and from, and attend government presentation); Liles Decl. Attachment A (*see, e.g.*, January 30, 2018 entry for 10.4 hours for "Flew to Boston to meet with co-counsel, Suzanne Durrell to prepare for the upcoming meeting with the government. Met with Cheryl"); Weidenfeld Decl. Ex. 1 (*see, e.g.*, April 29, 2019 entry for 8 hours for "Travel and preparation for meeting with government"). Courts have repeatedly deemed such fees ineligible for recovery. *See Customs Fraud Investigations, LLC v. Victaulic Co.*, No. 13-2983, 2019 WL 4280494, at *7 (E.D. Pa. 2019); *U.S. ex rel. Poulton v. Anesthesia Assocs. of Burlington, Inc.*, 87 F. Supp. 2d 351, 357–58 (D. Vt. 2000) (reductions for "non-productive travel time" were appropriate). The Court should exclude undifferentiated travel time from any lodestar calculation.

Lovell and McKusick also request fees for almost 90 hours spent performing vaguely described tasks related to an unidentified expert, amounting to $99,502 in fees. Walters Aff. Ex. C at 5–6; *see also* Durrell Decl. Exhibit 1 (*see, e.g.*, Suzanne Durrell's February 20, 2020 entry for 6 hours for "Review and edit memo for experts"); Weidenfeld Decl. Ex. 1 (*see, e.g.*, April 6, 2020 entry for 3.2 hours for "Reviewed draft expert report from counsel; provided comments and suggestions"). Lovell and McKusick provided no information about the identity of this expert or even the purpose for which he or she was retained, leaving no way to evaluate the reasonableness of these fees. *See Martinez v. Hodgson*, 265 F. Supp. 2d 135, 140 (D. Mass. 2003) (decreasing fee for general entries such as "call from expert" where no detail is given regarding the nature of the factual or legal issue being discussed or reviewed); *see also Averback*, 224 F. Supp. 2d at 356 (subtracting a fee requested for an expert where the fee was not "backed up with disclosure of the expert's billing rate, qualifications, [and] explanation of the nature of the review conducted or justification for the review"). Hours billed related to the expert should be excluded from any lodestar amount.

   D. <u>Lovell and McKusick Cannot Recover for Fees Associated with Negotiating Relator's Share or Working on First-to-File Issues</u>

Over 15 hours' worth of Lovell and McKusick's legal fees appear to concern attempts to negotiate with counsel for Relator Sanborn regarding relators' share and first-to-file issues, amounting to $19,266 in fees. Walters Aff. Ex. C at 6; *see also* Durrell Decl. Ex. 1. Such fees are not recoverable under the FCA's fee-shifting provision. *See Miller*, 575 F. Supp. 2d at 27 (holding that fees for time spent on recovery of relator's share were not compensable); *United States ex rel. Le Fan v. General Electric Co.*, No. 4:00-CV-222, 2008 WL 152091, *4 (W.D. Ky. Jan. 15, 2008) (reducing fee request for hours billed relating to a first-to-file dispute with another relator); *United States ex rel. Educational Career Dev., Inc. v. Central Fla. Reg'l Workforce Dev. Bd., Inc.*, No.

15

6:04-CV-93-ORL-19DABC, 2007 WL 1601747, *5 (M.D. Fla. June 1, 2007) (holding that fees associated with negotiation of relator's share of settlement not recoverable).  For example, Lovell and McKusick seek to recover fees associated with a November 22, 2019 entry for 2.5 hours spent on "Research on First to File law; draft memo" and a December 16, 2020 entry for 2.5 hours regarding "Draft Relator Sharing Agreement."  Walters Aff. Ex. C at 6; *see also* Durrell Decl. Ex. 1.  Similar examples abound, and these fees are not recoverable under the FCA.

## CONCLUSION

For the reasons set forth above, the Court should deny Lovell and McKusick's motion for attorneys' fees, costs, and expenses.

Date: May 14, 2021

Respectfully submitted,

*/s/ Sarah E. Walters*
Mark W. Pearlstein (BBO #542064)
Sarah E. Walters (BBO #638378)
Natasha L. Dobrott (BBO #705287)
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, Massachusetts 02116
Tel: (617) 535-4000
mpearlstein@mwe.com
sewalters@mwe.com
ndobrott@mwe.com

*Counsel for athenahealth, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of May 2021, a true and correct copy of the foregoing Opposition to Motion for Attorneys' Fees was served by electronic means through the ECF filing system, concurrent with the filing of this document, to:

David J. Derusha
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210
617.748.3100
david.derusha@usdoj.gov

Stephen S. Churchill
Fair Work, P.C.
192 South Street, Suite 450
Boston, MA 02111
617.607.3260
steve@fairworklaw.com

Jessica J. Weber
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210
617.748.3303
jessica.j.weber@usdoj.gov

Suzanne E. Durrell
Whistleblower Law Collaborative
20 Park Plaza, Suite 438
Boston, MA 02116
617.371.0936
suzanne@whistleblowerllc.com

Nicholas C. Perros
United States Department of Justice
Commercial Litigation Branch
175 N Street, NE, # 9.117
Washington, DC 20002
202.616.2629
Email:
nicholas.c.perros@usdoj.gov

Andrew Schlichter
Schlichter Bogard & Denton
100 South Fourth Street, Suite 1200
Saint Louis, MO 63102
314.884.7681
aschlichter@uselaws.com

/s/ Sarah E. Walters
Sarah E. Walters